**Harry Dean VAUGHN, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. M–75–271.**

Court of Criminal Appeals of Oklahoma.

July 14, 1975.

Tim K. Baker, Tahlequah, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Harry Dean Vaughn, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Cherokee County, for the offense of Operating a Motor Vehicle While Under the Influence of Intoxicating Beverage. His punishment was fixed at a term of thirty (30) days in the County jail with twenty (20) days suspended and a fine in the amount of One Hundred ($100.00) Dollars. From said judgment and sentence a timely appeal has been perfected to this Court.

At the trial Kathy Saeger testified she was a student enrolled at Northeastern State College. On the evening of September 21, 1974, she was visiting a friend, John Eckles, at his home located just outside the City of Tahlequah, Oklahoma. Just before midnight a man, whom she identified in court as the defendant, entered the house with a rifle. She could smell an odor of alcohol about the defendant. She related that the defendant said that some kids ran him off the road. Witness Saeger offered to call someone for the defendant and defendant requested her to call his brother-in-law. Witness Saeger called, but the line was busy. Thereafter, without objection by the defendant, she called the police. The defendant was then taken back to his pickup by John Eckles.

John Eckles testified his address to be Route 3, Box 85, Tahlequah, Oklahoma. On the night of September 21, 1974, he and Ms. Saeger were at his home. Just before midnight the defendant stepped inside his house (the door being open) carrying a rifle. The defendant stated that some kids had run him off the road and he had, as a result, had a wreck. The witness stated he could smell alcohol on the defendant's breath. Eckles asked the defendant if he wanted anyone called and he asked that his brother-in-law be called. Ms. Saeger tried to call his brother-in-law but was unable to reach him. Thereafter the police were called. Eckles then took the defendant back to his pickup and left him there to await the police.

Loy Lee testified that he was employed as an Oklahoma Highway Patrol Trooper. Trooper Lee further testified that he held

a permit as a Maintenance Supervisor for the breathalyzer. On September 20, 1974, he performed maintenance on the breathalyzer used in Cherokee County. On the following day the defendant was tested with the same breathalyzer. He next performed maintenance on the machine on October 22, 1974, and he testified that the machine was operating properly on both September 20 and October 22. Trooper Lee finally testified that he had observed the test performed by Trooper Don Fields on the defendant and that Trooper Fields had operated the machine correctly.

Don Fields testified he was employed as a Trooper for the Oklahoma Highway Patrol and that on September 20, 1974, he was on duty when he received a call that there had been an accident at the intersection of U.S. Highway 62 and State Highway 10. He proceeded to this location and found the driver "in an intoxicated state" and placed him under arrest. Shortly thereafter, he transported the defendant to the Cherokee County Jail where he administered a breathalyzer test at approximately 12:15 a. m. on the 21st day of September, 1974. Trooper Fields further testified that prior to the test he went through the operational check list to make sure the machine was operating properly. After observing the defendant approximately 30 minutes, he administered the test. This test revealed .19% blood alcohol. The State then rested.

Annette Vaughn was the first witness for the defendant. She testified that she was the defendant's wife. She stated that from the time she arrived home from work (approximately 4:00 p. m.) until the defendant left to go to his father's home (approximately 8:00 p. m.) she did not see him consume any alcohol.

Earl Vaughn, the defendant's brother, testified that on the evening in question the defendant came to his house on his way to their mother's home. He did not smell any alcohol on the defendant's breath, nor did the defendant consume any alcohol while at his house.

The defendant then took the stand in his own defense. He testified that he was on his way to his father's house from his brother-in-law's home. A pickup passed him, "it was raining real hard and just as this pick-up passed me they threw something out of their window and it hit my truck and then I don't know what happened, but I crashed." (Tr. 114) The defendant further testified that up until the time he had the accident he had not had a drink. After the accident, he took a bottle of whiskey out of his pickup and drank all that he could and then threw the bottle away.

The defense then rested.

Defendant's first assignment of error asserts error in the trial court's overruling his motion to suppress the results of the breathalyzer test. Defendant contends that the following rule promulgated by the Oklahoma Board of Chemical Tests for Alcoholic Influence was not followed in the instant case, citing *Westerman v. State*, Okl.Cr., 525 P.2d 1359 (1974), and therefore rendering the test results inadmissible:

> " '(b) The following maintenance shall be performed on the above listed equipment at least once during each thirty (30) day period or after every twenty-five (25) tests, whichever occurs first, by a person possessing a valid breath Alcohol Analysis (Supervisor) Permit by the Board.' "

■ The record reveals that on September 20, 1974, the 30 day maintenance was performed by Trooper Lee and the machine was operating properly after the maintenance. The defendant was tested less than 24 hours later on the same machine and prior to the test the machine was found to be in proper working order. However, subsequent maintenance was not performed until October 22, 1974, 31 days later. We would be more persuaded by defendant's argument had he been tested more than 30 days after the last maintenance and prior to any subsequent maintenance check. The defendant, however, was checked less than 24 hours after the last maintenance check. It is our opinion, and we so hold, that the results of any

tests performed within the 30 day period after maintenance or within 25 tests after maintenance, whichever comes first and so long as all other procedures are correctly followed, would be admissible in evidence. In the event maintenance is not performed within 30 days after the last maintenance or after 25 tests, then any test performed after these periods and prior to any subsequent maintenance would render the results inadmissible for failure to comply with the rules and regulations promulgated by the Board of Chemical Tests for Alcoholic Influence. We therefore find this assignment of error to be without merit.

■ Defendant's second assignment of error asserts error in closing argument by the State. In the case of *Samples v. State,* Okl., 337 P.2d 756 (1959), this Court held:

"In view of the evidence, we must apply the principle long adhered to by this court that a conviction will not be reversed for alleged misconduct of the prosecuting attorney, unless this court can say that the prosecuting attorney was not only guilty of misconduct, but that such misconduct might, in some degree, have influenced the verdict against the defendant."

See also, *Harvell v. State,* Okl.Cr., 395 P. 2d 331 (1964), wherein this Court stated at page 339 of the official opinion:

". . . It is not error alone that reverses judgments of conviction of crime in this State, but error plus injury, and the burden is upon the defendant to establish to this Court that he was prejudiced in his substantial rights by the commission of error."

We have carefully reviewed all the complained of closing argument and cannot say that the alleged misconduct influenced the verdict against the defendant. Therefore, any error in the State's closing argument was at most non-prejudicial.

It is therefore our opinion that the judgment and sentence appealed from should be, and the same is, hereby, *affirmed.*

BRETT, P. J., and BLISS, J., concur.