**STATE of Missouri, Respondent,**

v.

**Ronald L. NICCUM, Appellant.**

No. 56744.

Missouri Court of Appeals,
Eastern District,
Division One.

March 27, 1990.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
April 25, 1990.

Application to Transfer Denied
June 19, 1990.

James Jay Knappenberger, Charles M. Shaw, Clayton, for appellant.

Thomas L. Hoeh, Perryville, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Ronald L. Niccum, appeals from his conviction of driving while intoxicated under RSMo § 577.010 (1986) after a bench trial. Appellant received a $500.00 fine, the execution on $300.00 of which was suspended, and a 30 day jail sentence. Appellant was required to spend forty-eight hours in the Perry County jail and the balance of his jail sentence was suspended. He was then placed on two years supervised probation. We affirm.

In the early evening of October 8, 1988, appellant left a Perryville, Missouri bar, "The Place," in his pickup truck. Appellant admits having consumed alcohol sporadically during the day but denies that he drank any liquor at "The Place" and claims to have only had five drinks from noon until his departure from "The Place" at around 6:30 p.m. Shortly after he left "The Place," Officer Diereck Hunt, who was driving his patrol car behind appellant,

noticed that appellant's truck had expired plates and pulled him over. Officer Hunt testified that he noticed that appellant's eyes were watery, his walk staggered, and speech slurred. He also detected the odor of alcohol on appellant and decided to administer field sobriety tests.

Officer Hunt had appellant attempt to perform the alphabet, finger-to-nose, one-legged stand, and the heel-to-toe walk and turn tests. Officer Hunt testified that appellant failed to adequately perform any of these tests. Officer Hunt, therefore, took appellant to the Perryville Police Station so that a breath analysis could be performed.

Officer James Chappius administered a breathalyzer test to appellant on a Smith and Wesson .900 breathalyzer. Officer Chappius is a certified Type III operator under Missouri Division of Health regulations 19 C.S.R. 20–30.041. As a Type III permittee, he is qualified to administer the test so long as his certification remains valid. The breathalyzer showed appellant had a blood alcohol content of .18 percent, which was above the legal limit of .10 percent under RSMo § 577.012 (1986).

Officer Chappius completed a checklist furnished by the Division of Health which certified that the proper procedures were followed in administering the breathalyzer exam. Officer Chappius also testified that he followed the procedure required by the Division of Health.

Officer Chappius, however, had difficulty inserting the tube which appellant used to project his breath into the "gauge test ampoule", or the bottle which collects appellant's breath sample. Officer Hunt, who was with Officer Chappius as a witness, connected the tube properly into the ampoule and Officer Chappius then finished administering the test. Officer Hunt did not possess a certification to operate the breathalyzer.

On appeal, appellant claims that the trial court erred in admitting the results of the breathalyzer test into evidence since a non-certified officer assisted in a portion of the procedure. Appellant's argument is based on RSMo § 577.026 (1986) which states:

1. Chemical tests of the person's breath, blood, saliva, or urine to be considered valid under the provisions of sections 577.020 to 577.041, shall be performed according to methods and devices approved by the state division of health by licensed medical personnel or by a person possessing a valid permit issued by the state division of health for this purpose.

2. The state division of health shall approve satisfactory techniques, devices, equipment, or methods to conduct tests required by sections 577.020 to 577.041, and shall establish standards as to the qualifications and competence of individuals to conduct analysis and to issue permits which shall be subject to termination or revocation by the state division of health.

In accordance with this statute, this court has held that a prima facie foundation for the admission of such tests exists when the state introduces evidence that the test was administered 1) according to techniques and methods approved by the Division of Health, 2) by a person possessing a valid permit, and 3) using equipment and devices approved by the division. *Patton v. Director of Revenue*, 768 S.W.2d 670, 671 (Mo.App., E.D.1989). "Introduction in evidence of a checklist approved by the Division of Health and testimony that the procedures there defined were followed is a sufficient foundation to allow admission of the results in evidence." *State v. Bush*, 595 S.W.2d 386, 388 (Mo.App., E.D.1980).

Clearly, in the present case the checklist and testimony regarding the procedures were properly introduced. The question we must address is whether the brief assistance rendered by the unlicensed officer rendered the breathalyzer results inadmissible under RSMo § 577.026 and *Patton*. We are of the opinion that the admission of the test results was not improper.

We must point out that both Officer Chappius and Officer Hunt testified that the only task performed by Officer Hunt was the connecting of the tube into the machine. Officer Hunt did not perform any of the more intricate operations speci-

fied by the Division of Health and contained on the checklist. These operations include purging the ambient air from the machine, adjusting the controls of the breathalyzer, taking the breath sample itself, and recording the results. Each such function was performed by Officer Chappius who certified that *all* of the proper procedures, including the insertion of the tube, were followed. Indeed, appellant does not argue that the procedures were not followed or that the machine was not properly working. Given the insignificant participation of Officer Hunt and the fact that Officer Chappius was present throughout the procedure, administered the test itself, and certified that the procedures were followed without deviation, we conclude that the test results were admissible. While our research has not uncovered a similar situation in Missouri, there are decisions of other states that provide some guidance.

In *Herter v. State*, 715 P.2d 274 (Alaska Ct.App., 1986), the breathalyzer test was administered by an officer whose certification had expired. *Id.* at 275. The court acknowledged this fact yet found the test results to be admissible based on the fact that there was testimony by the administering officer and a witness that the required procedures were followed. *Id.* at 276.

In *Grogan v. State*, 482 N.E.2d 300 (Ind. Ct.App., 1985), the administering officer's certification had also expired prior to his administering a breathalyzer exam on defendant. *Id.* at 305. Even though the court found that the officer did not possess the certification required, it allowed a substitute certification which he possessed to suffice. *Id.*

In both of these cases, non-certified operators actually administered the tests. In our case, Officer Chappius, who was certified, administered the test. In the circumstances of our case, we find that the Missouri requirement that a certified operator administer the breathalyzer test has been complied with, despite Officer Hunt's help.

Moreover, appellant has not shown any prejudice by Officer Hunt's participation.

*State v. Powers*, 690 S.W.2d 859, 861 (Mo. App., S.D.1985). There is no evidence that the tube was incorrectly inserted by Officer Hunt nor is there any suggestion that the results were in any way affected by his participation.

Appellant also asserts that there was no substantial evidence to support his conviction. However, since his argument is premised on his contention that the breathalyzer results were inadmissible, appellant's argument falls of its own weight.

Appellant's conviction and sentence are affirmed.

REINHARD and CRIST, JJ., concur.